IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN HEATH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-5302 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM

**TUCKER, J.** June __29th__, 2021

Presently before the Court are Defendants City of Philadelphia, Commissioner Sylvester M. Johnson, Commissioner Charles Ramsey, Commissioner Richard Ross, Deputy Commissioner John Gaittens, Deputy Commissioner William Blackburn, Deputy Commissioner Patricia Giorgio-Fox, Deputy Commissioner Denise Turpin, Chief Inspector Christopher Flacco, and Captain John McGinnis' Motion for Summary Judgment (ECF No. 32), Plaintiff Evelyn Heath's Response in Opposition (ECF Nos. 34-36), and both parties' replies (ECF Nos. 38-40, 42). Upon careful consideration of the Parties' submissions and exhibits, and for the reasons set forth below, Defendants' Motion is granted.

I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff, a retired Chief Inspector with the Philadelphia Police Department (PPD), brought this employment discrimination and retaliation action under Title VII of the Civil Rights

---

[1] In the Factual and Procedural Background section, the Court draws from the Statement of Stipulated Material Facts submitted by Defendants in their Motion for Summary Judgment. ECF No. 32. The Court will not cite to each statement. Where discrepancies are present, the Court will cite to Plaintiff's Response to Stipulated Statement of Facts. ECF No. 34.

1

Act of 1964, 42 U.S.C. § 2000e, § 1983 and § 1988. She seeks damages to redress her long-term suffering from alleged discrimination and retaliation, and from being forced into early retirement in March 2015 due to her ongoing fear of retaliation and harassment based on her gender.

Evelyn Heath was employed by the Philadelphia Police Department from 1981 to 2015. In her over thirty years of employment with the PPD, Plaintiff alleged a string of loosely-connected incidents involving her employment with the agency. We will start with incidents arising after 2010. Heath resolved an earlier lawsuit against the City of Philadelphia, docketed in the Eastern District of Pennsylvania as civil action number 08-2777, by stipulation filed June 18, 2010 that tolled the statute of limitations for that set of claims. Plaintiff re-raises some of those claims in the instant matter as part of the basis for her gender discrimination allegations.

Heath elected to enroll in PPD's Deferred Retirement Option Plan (DROP) effective March 21, 2011, and formally retired exactly four years later on March 20, 2015. At the time of her retirement, Heath held the rank of Chief Inspector. Retirement after reaching four years of DROP enrollment entitles the entrant to the maximum DROP payment, and once enrolled in DROP, an enrollee cannot remain in their position for more than four years. Heath completed, signed, and initialed each clause on the "Official DROP Enrollment Form," a document she completed in March 2011, that confirmed her understanding of the terms and conditions of the DROP program. Plaintiff ultimately received a lump-sum DROP payment of $402,000, along with a lifetime pension of $91,000 per year. Heath Dep. 125:21-24 and 126:1-8 (ECF No. 38).

On February 21, 2012, Plaintiff reported to police that her neighbor, Celeste Grevy, had threatened her. PPD Investigation Report dated February 25, 2012 at 1 (ECF No. 38, Ex. L). By March 30, 2012, the investigation into Plaintiff's complaint had been completed and Plaintiff was advised to file a private criminal complaint against Grevy. *Id.* at 3. Plaintiff never filed one. Heath Dep. 190:12-191:7 (ECF No. 38, Ex. M).

2

In October of 2013, Plaintiff was accused of sending a series of anonymous handwritten letters threatening fellow officers at PPD. On October 18, 2013, the Internal Affairs Division (IAD)'s investigation substantiated this allegation. Internal Affairs Investigation 13-1021, November 22, 2013, at 15-17 (ECF No. 38, Ex. F). The IAD's investigation was aided by a forensic handwriting analyst working for the Federal Bureau of Investigation (FBI), who conclusively linked the handwritten letters to Plaintiff. In response, Heath filed a departmental EEO complaint alleging gender discrimination on October 31, 2013. In or around November 2013, the Police Board of Inquiry (PBI) received the IAD file sustaining departmental disciplinary violations against Plaintiff. *Id.* at 17. Plaintiff alleges that the true author of the letters (a retired Captain) confessed to the deed, but Plaintiff was nevertheless subject to formal disciplinary action for the letters because she filed an EEO Complaint regarding the letter writing investigation and PPD's failure to act upon threats from her neighbors.[2]

Events described in Plaintiff's Complaint occurring after October 7, 2014 are limited to off-duty disputes between Heath and her neighbors, Celeste and Paul Grevy. Plaintiff did not report for active duty with PPD between November 2013 and her retirement date of March 20, 2015. On February 16, 2015, Heath got into a physical altercation with her neighbor Celeste Grevy. Plaintiff claims that she briefly declared herself "on duty" to effectuate an arrest of her neighbor Celeste Grevy on February 17, 2015. ECF No. 34. However, Plaintiff did not "report for active duty" on February 17, 2015, or any other time between November 2013 and her retirement. While Plaintiff believes that PBI disciplinary proceedings against her were completed during this time, there is no record evidence that the City completed PBI proceedings against Plaintiff at any time after October 7, 2014.

---

[2] Pl.'s Am. Compl. (ECF No. 9 at 14)

As for Plaintiff's pre-2010 allegations of PPD misconduct that resulted in settlement, in 2003, Plaintiff was promoted to the highest PPD civil service rank, Chief Inspector (Chief). The PPD assigned her to the Training Bureau. During Plaintiff's assignment as Chief she was subjected to a two-and-a-half-year investigation initiated by her former fiancé, Nick DiPasquale, and his new partner, Janie DiPasquale, based on allegations that Plaintiff was stalking them. After another IAD investigation in 2006, Plaintiff was transferred to Night Command, then terminated on June 14th. Plaintiff noted that at the time of termination, she was asked to meet with Defendant Johnson and his Deputy Commissioners, which she claims was never previously done with similarly ranked male officers. Plaintiff was presented with formal disciplinary charges for failing to cooperate with the investigation initiated by the DiPasquales. Plaintiff was told she could either (i) immediately retire, or (ii) be suspended for 30 days with intent to dismiss—she chose the former. When the Fraternal Order of Police (FOP) was notified of Plaintiff's termination, FOP President John McNesby told Defendant Giorgio-Fox that Plaintiff did not deserve termination, to which she replied, "I know, we'll write the check later."

On March 8, 2007, the parties began arbitration. In January 2008, as a result of the arbitration, Plaintiff was reinstated, along with pay, benefits, seniority, and assignment to her previous position as Chief of the Training Bureau. Instead, PPD assigned Plaintiff to the Forensic Science Bureau, and Plaintiff alleges that Inspector Mulvey treated her differently than males in similar positions with regards to her service weapon, service vehicle, and Plaintiff's personal staff members. ECF No. 9.

* * *

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on December 1, 2015, and she filed this lawsuit on October 7, 2016. Plaintiff seeks money damages from the City of Philadelphia – her former employer – and nine individual

members of PPD, only one of whom remains employed by the agency. Defendant Johnson retired from PPD in January 2008. Defendant Gaittens left PPD in December 2012. Defendant Giorgio-Fox retired from PPD in February 2013. Defendant McGinnis retired in November 2014, and Defendant Blackburn retired in January 2015.

## II. STANDARD OF REVIEW

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, she has the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains her initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986)).

5

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the Court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Defendants move for summary judgment on the basis that Plaintiff failed to prove the timeliness of allegations predating both the 2010 settlement and October 2014—when the statute of limitations for her newer claims began to run. Specifically, Defendants argue that Plaintiff stopped physically reporting for work in January of 2014, ten months before the statute of limitations began running for her claims, and raised no cognizable claims of discrimination within the appropriate timeframe. The Court agrees that Plaintiff raises no timely claims of discrimination, presents insufficient evidence of a pattern of continuing gender discrimination against Plaintiff, and presents no relevant comparators with different treatment. Accordingly, the Court grants summary judgment in this matter.

### A. Plaintiff's Claims are Time Barred, and the Claims Subject to the 2010 Tolling Agreement are Barred by Laches.

Claims under § 1983 must be brought within Pennsylvania's two-year statute of limitations for personal injury actions. *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019). Likewise, Title VII requires a claimant in Pennsylvania to file an employment

6

discrimination charge within 300 days of an alleged unlawful employment practice. *Mikula v. Allegheny Co. of Pa.*, 583 F.3d 181, 184 (3d Cir. 2009). For her claims to be timely, Plaintiff must identify acts of employment discrimination that occurred after October 7, 2014. Plaintiff stopped reporting for work on January 24, 2014 – nearly ten months before the statute began running. Her 2015 altercations with a neighbor have no tie to her discrimination claims, and she presents no male officers with similar public disputes resulting in differential treatment by the PPD. Plaintiff claims to have entered DROP early against her will but has not presented evidence to support that claim. Further, even if Plaintiff had presented evidence to support her claim, it would still be untimely. Plaintiff decided to enter DROP in March of 2011, three and-a-half years prior to commencement of the limitations period, **and** after the 2010 settlement which tolled some claims to be raised at a later date.

Plaintiff is unable to identify evidence of differential treatment based on gender between 2014 and 2016. Therefore, she presents no evidence of a continuing practice of discrimination that could reactivate her claims arising between 2010 and 2014.

Plaintiff's claims pre-dating the 2010 tolling stipulation are barred by the doctrine of laches, as she inexcusably delayed pursuing her claims, thereby prejudicing Defendants. All but one of the individual defendants have retired, and beyond the difficult-to-access witnesses, her claims involve difficult-to-obtain documents. Because of the prejudice inherent in meaningfully litigating old claims with inaccessible evidence, the doctrine of laches "may depend solely on the comparable statute of limitations." *Penn Nat'l Ins. Co. v. N. River Ins. Co.*, No. 18-2687, 2019 WL 3430264, at *3 (3d Cir. July 30, 2019). *See also*, *Patterson v. Hewitt*, 195 U.S. 309, 319 (1904) (showing courts applying the doctrine of laches even in situations where the comparable statute of limitations has not run).

Plaintiff has the burden of proving excusable delay and that her delay has not prejudiced Defendants. She contends that her actions between 2010 and 2016 illustrate due diligence in preserving her claims, but still offers no valid reason for her delay, and no proof that Defendants have not been prejudiced. Pl.'s Resp. Defs.' Mot. Summ. J. at 18. Prejudice is presumed when there is a delay in excess of the analogous, state statute of limitations, and pecuniary losses as well as ripple effects on staffing and/or business operations are factors in determining prejudice to defendant. *Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1260 (3d Cir. 1974). By way of explanation for her delay Plaintiff said the following: "Well, probably because there was just a lot going on in my life and emotionally I just couldn't get my act together enough to pursue [the 2008 claims] until I was ready to do it again." Heath Dep., 122:5-10. This explanation is not viable, and the delay has indeed prejudiced Defendants. For instance, Plaintiff granted stipulations for extensions acknowledging that outstanding documents were "difficult to obtain given [the] timeframes of the matters at issue." Stipulation for Extension (ECF No. 24). *See also*, Heath Dep. 149:4-8 (After asserting that a man named Tommy Thompson could clear her good name, Plaintiff could not provide Tommy's whereabouts, stating: "Who the heck knows where he's at?"). Both pecuniary losses in the form of litigation costs as timelines extend to accommodate inaccessible evidence as well as potential settlement payments, and ripple effects on implicated staff are present here.

Had Plaintiff attempted to litigate her claims within two years of the tolling stipulation, laches would not have barred her claims, but over a decade after the 2008 arbitration, the delay is inexcusable, and she presents no genuine, timely issue for trial. Summary judgment is granted as to these claims.

### B. Plaintiff Has Not Produced Affirmative Evidence of Acts of Discrimination During the Applicable Limitations Periods and Therefore Cannot Support a "Continuing-Violation" Theory Under § 1983 or Title VII.

Plaintiff argues that the continuing violation doctrine supports her untimely claims, but offers insufficient evidence of conduct that would fall within it. The continuing-violation doctrine postpones the running of the statute of limitations "when a defendant's conduct is part of a continuing practice." *Randall*, 919 F.3d at 198 (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). The doctrine maintains that "so long as the last act [in] the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* at 198-99. However, "the continuing-violation doctrine focuses on continuing acts, not effects." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001). "In other words, the doctrine relies on a defendant's continuing acts, not a plaintiff's continuing injury." *Id.* Plaintiff claims that ongoing discriminatory activity includes the "baseless letter writing campaign," finding Plaintiff guilty *in absentia* at a PBI hearing, denying Plaintiff her DROP money in a timely fashion,[3] and being driven to sick leave for mental health because of discrimination and retaliation. Pl. Resp. Def's Mot. Sum. Judg. Pg. 6. Plaintiff offers insufficient evidence to support a connection between these alleged actions and gender discrimination of any kind, or even between these events themselves, except for cumulatively feeling driven to take sick leave. While Plaintiff's mental health concerns are not taken lightly, the evidence presented about her alleged injuries do not support a finding of continuing discriminatory acts.

---

[3] Plaintiff alleges that her assistant was not permitted to drop off her paycheck at her residence the way male chief's assistants were allowed to do.

### C. Plaintiff's Monell Claim Fails as a Matter of Law.

Plaintiff fails to prove any fact or circumstance demonstrating that a municipal policy or custom deprived her of any constitutional right. Because a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents[,]" a § 1983 claim asserted against a municipality must demonstrate that alleged constitutional deprivations were caused by an official policy or custom of the municipality. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). See also *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). A policy is a decision of a municipality's "duly constituted legislative body" or of "officials whose acts may fairly be said to be those of the municipality." *Kocher v. Larksville Borough*, 548 F. App'x 813, 821 (3d Cir. 2013) (quoting *Bryan Cty.*, 520 U.S. at 403–04). A custom is a practice that, although "not . . . formally approved by an appropriate decisionmaker . . . is so widespread as to have the force of law." Id. (quoting *Bryan Cty.*, 520 U.S. at 404). Plaintiff alleges a custom of "sexual discrimination and retaliation" based on reports of Chief Inspector Carl Holmes being charged with sexual assault against another officer, and Inspector Anthony Washington being accused of sexual harassment by another officer and being removed from his position in the Special Victims Unit. Plaintiff does not accuse any officers of sexual assault in this matter, and she fails to tie the above-named officers, or similar conduct from other officers to a deprivation of her constitutional rights. Thus, Plaintiff's *Monell* claim cannot withstand summary judgment.

### D. Plaintiff's Equal Protection Claim Fails Because She Has Not Identified Any Similarly-Situated Comparators.

To succeed on an Equal Protection claim under § 1983, a plaintiff must prove the existence of purposeful discrimination by illustrating that she received different treatment from similarly situated individuals, motivated by discrimination or punishment for exercising a

constitutional right. Further, the plaintiff and the identified party must be alike in all relevant aspects. *See*, *Boyer v. City of Phila.*, 2019 WL 3731612, at *2 (E.D. Pa. Aug. 8, 2019). Here, Plaintiff has not identified any similarly-situated comparators, crippling her Equal Protection claim. Plaintiff was a high-ranking officer who was investigated for distributing anonymous handwritten letters threatening her colleagues and formally sanctioned. She was involved in a protracted dispute with her neighbors that bled into her professional life once the altercations became physical and the police were involved. And, due to mental health concerns, she took months of sick leave before entering the DROP program. In this unique position, finding comparators may be difficult. Nevertheless, Plaintiff failed to identify colleagues or contemporaries that were alike and treated differently during the time frame in question. Accordingly, summary judgment should be granted in favor of Defendants.

## IV.  CONCLUSION

Given that Plaintiff's claims are both time barred and insufficient to establish gender discrimination, the motion for summary judgment is **GRANTED**.

An appropriate order follows.